(C. D. 358)

Axel Stokby et al. *v.* United States

United States Customs Court, Third Division

(Decided June 18, 1940)

*Strauss & Hedges* and *Barnes, Richardson & Colburn* (*Hadley S. King* of counsel) for the plaintiffs.

*Webster J. Oliver,* Assistant Attorney General (*Joseph F. Donohue,* special attorney), for the defendant.

Before Cline, Evans, and Keefe, Judges

Keefe, Judge: In this suit the plaintiffs seek to recover customs duties assessed upon certain hams imported in hermetically sealed tins. Duty was assessed upon the contents of the tin including the

weight of a certain jelly-like substance surrounding the hams. The pertinent portion of the Tariff Act of 1930 under authority of which duty was assessed provides as follows:

PAR. 703. * * * hams, and shoulders, and other pork, prepared or preserved, 3¼ cents per pound * * *.

The plaintiffs claim that duty should be assessed upon the basis of the net weight of the hams and in determining the net weight allowance should be made for inside tare as well as outside tare, including all tin, paper, cloth, juice, jelly, and any substance or material of whatever character.

At the trial the plaintiffs called eleven witnesses, whose testimony may be summed up as follows:

In preparing the product for market the raw ham is weighed and while still upon the scales a pickling solution is pumped into the arteries and veins. The amount of solution is very carefully controlled so that it varies in weight from 10 to 15 per centum of the weight of the raw ham. The ham is then placed in a pickling tank where it remains for several days. Thereafter the bone is extracted and the superfluous skin and fat removed and a piece of meat taken from another portion of the carcass of the hog is inserted in place of the bone. The product, now ready for cooking, is placed upon scales and weighed preliminary to placing into the can and the weight thereof is embossed upon the can. The canning is performed either by hand or by special machine and the water necessarily pressed out of the ham at the time falls into the container, there being no leakage between the pressing apparatus and the can. Therefore, the weight embossed upon the can represents the true weight of the contents. Before the can is vacuum sealed a wafer of agar-agar, weighing from one-half to one ounce is placed in the can. After sealing it is cooked at a temperature under the boiling point for some hours depending upon the size of the ham. The wafer of agar-agar causes the pickling juices exuding from the ham during the cooking process to form a jelly which swells so as to fill all of the empty space in the tin. The difference between the weight of the raw ham containing the juices inserted therein as placed in the container and the weight of the cooked ham after being taken from the tin is equal to the weight of the jelly-like mass surrounding the ham.

Five of the witnesses testified that in testing the amount of jelly in a can of ham they found that it varied from 10 to 15 per centum of the weight of the ham as shown upon the container. Eight witnesses testified that the greater portion of the hams is sold to butchers, grocers, or delicatessens who resell by cutting and slicing the ham. That the jelly is invariably removed and thrown away as useless and not sold as a part of the ham. A few of the witnesses also testified

that the jelly is added to expand the juices and thereby fill the empty space in the can, and in addition it acts as a cushion to prevent the ham from breaking.

A thoroughly qualified food chemist testified that he made a physical analysis as well as a chemical analysis of the contents of a can of ham similar to the hams in question. His analysis showed that the gelatine weighed approximately 10 per centum of the weight of the ham appearing upon the container as net weight. The jelly was composed of 92.1 per centum of water and 7.9 per centum of gelatinous material. The protein content of gelatinous material was 4.39 per centum. The weight of the gelatinous material was found to be 20 ounces. The liquid portion weighed 18.42 ounces and the solid portions 1.58 ounces. The protein content of the gelatinous material equalled 4.39 per centum or approximately .07 of an ounce. He further testified that it is an accepted scientific fact that water which is added to meat artificially will come off first when meat is pressed or heated and that the water naturally present in any meat is very closely united with the meat and considerable effort is required to remove it.

The Government produced one witness who testified that he was the executive chef at the Hotel New Yorker and that it was his practice to allow nothing to be wasted. The jelly taken from canned hams is saved for use in making "patty" or added as a flavoring. However, he admitted that the jelly was never used with the ham itself.

The plaintiffs contend that the gelatinous material is discarded when the ham is used and therefore it is not part of the dutiable weight of the imported merchandise.

The Government contends that the gelatinous material surrounding the ham is composed chiefly of nothing other than the natural juices and tissue of the meat and that it is properly included as a part of the dutiable weight of the ham.

In our opinion the evidence establishes that the gelatinous material surrounding the ham is actually composed of the coagulated juices artificially injected into the ham and remaining therein at the time the container was vacuum sealed. Evidence of the protein content of the gelatinous material is quite persuasive in establishing that there is a negligible quantity therein of the natural juices of the ham present. It is also well established by the evidence that the jelly-like material surrounding the hams is discarded when taken from the containers and that it is not generally sold to consumers as a part of the hams.

In the case of *Von Bremen, Asche & Co.* v. *United States*, T. D. 44000, 57 Treas. Dec. 679, this court held that where a paragraph of the statute provides for the assessment of a specific rate of duty upon a commodity based upon its weight, such rate cannot be applied to any foreign substance in which the commodity is packed.

In the case of *Von Bremen, Asche, De Bruyn, Inc.* v. *United States,* T. D. 46643, 64 Treas. Dec. 269, the dutiable weight of pimientos was held to be the net weight thereof exclusive of the weight of the liquid in the tins. There a finding was made that the preponderance of evidence established that such liquid is customarily discarded and is of no value, and that the merchandise is sold upon the basis of the net weight. The court set out the underlying principle in language as follows:

* * * The controlling factor in these cases appears to have been that in each instance the respective paragraph of the tariff act had provided for a specific duty at a certain amount per pound on the actual weight of the commodity, no reference having been made to the immediate covering, coupled with the fact that in each case the covering or foreign substance, be it water, sirup, oil, or what not, was habitually discarded when it came to the ultimate use of the commodity.

In the cases before us we are of the opinion that the minimum amount of juices added to the hams is 10 per centum of the weight shown upon the cans as the weight of the contents. Upon authority of the decisions cited we hold that the dutiable net weight of the hams in question is the net weight of the contents as shown upon the cans, less 10 per centum, the minimum weight of the added water and gelatinous material. Judgment will therefore be entered in favor of the plaintiffs directing the collector to reliquidate the entries and make refund of duties accordingly.