(C. D. 1187)

BJELLAND, LANGE & CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 18, 1949)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

COLE, Judge: Merchandise invoiced as sild-sardines in oil of Norwegian sild-sardines was classified under paragraph 718 (a) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 718 (a)), which provides for "Fish, prepared or preserved in any manner, when packed in oil or in oil and other substances, 30 per centum ad valorem."

Plaintiff accepts this classification and directs its protest against the assessment of 1½ cents per pound imposed under the provision for "herring oil" in section 2491 (a) of the Internal Revenue Code (26 U. S. C. § 2491 (a)), as modified by the trade agreement with

Iceland, 79 Treas. Dec. 79, T. D. 50956, claiming that the oil was merely packing material and therefore not subject to such tax. The issue is thus stated by counsel for plaintiff:

Plaintiff contends that for customs purposes, the oil in question is neither "merchandise" nor an "article imported," but is only packing material, and therefore not separately dutiable, under the well-established rule that packing material is not separately dutiable as imported merchandise.

It is conceded that a sild-sardine is a herring, that sild-sardine oil is herring oil, and that an amount of 2.5 kilos of such oil was added to each case thereof.

The record consists of the testimony of two witnesses, each side having introduced one, and representative samples (collective exhibit 1) of the merchandise in question.

For the plaintiff, testimony was offered by its vice president and treasurer, whose active participation as general manager of the business, importing and distributing canned foods, including sardines in oil from Norway, requires him to buy and sell his company's products. He examines samples of his imported merchandise "mainly to see that it is the quality and type of merchandise we have ordered so that we can speak about it to our customers."

Based upon a visit to the plant of the Norwegian packer and personal observation of operations there, the witness described the process followed in packing sild-sardines. After the fish are caught and brought to the factory, they are given a short bath in brine, washed off, and then subjected to a smoking process. The sardines are further prepared by cutting off their heads and are then placed in empty cans that are filled with oil before the closing machine puts on the lids or tops. The filling is done automatically, whereby the cans pass under the filling machine and a definite amount of oil, predetermined to fit the requirements of the container, is added. There were 2.5 kilos of the sild-sardine oil, as hereinabove set forth, added to each case of sardines. After the cans are closed, they are put through a sterilizing machine that applies pressure and heat, thereby pasteurizing the cans and preventing deterioration.

The use of sild-oil is a very recent practice, being a replacement for olive oil or vegetable oil. "Without the oil the fish would not be commercially known as Norwegian sardines and would not, could not be sold as sardines," because the fish would change in physical characteristics and qualities and not be marketable. The packed sardines may absorb some of the sild-oil that has been added in the container, while some of the natural fish oil may enter the added substance. In other words, there may be a certain interchange of the oils. Reference was made to a most unusual occurrence, characterized as "the result of an accident," when the witness examined

a can of sardines without the oil and found "the fish in that particular can was very dark and very dry" and not marketable.

Testifying concerning his personal use of sardines like those under consideration, the witness stated "I have eaten them myself as canapes or sandwiches and in salads," using the sardines only by lifting them out of the can and discarding the oil. Such testimony, as it appears in the present record, can be regarded only as a personal preference for enjoying these sardines as food. The statements certainly cannot be accepted as proof of the general or usual disposition of the sild-sardine oil the subject of the present discussion.

On the matter of commercial usage, mention was made of "one customer in New York, a restaurant chain, which normally uses our sardines." The witness referred specifically to Horn & Hardart who (it is known as a matter of common knowledge) operates the popularly known "Automat" restaurants in New York and Philadelphia. The witness' knowledge of what the said restaurants do with the oil in cans of Norwegian sild-sardines was obtained "by eating in the restaurant myself and they were serving them in sandwiches, and there was no oil added to the sandwich. The sardines were there but naturally the oil couldn't be put on the sandwich in the restaurant." The testimony just quoted lost all of its force and effect—if indeed it ever had any—when the witness, in response to the court's question "You didn't see them make the sandwich, did you?", answered "No."

Defendant's testimony comes from the customs examiner who advisorily classified the merchandise. His testimony, based upon 12 years' experience in examining imported fish and fish products, tends to support the action of the collector, particularly as he explained that the sild-oil under consideration is a refined oil, expressed from other sild-sardines, and that such oil permeates into and is absorbed by the fish, thereby helping to retain their flavor.

To support plaintiff's position, counsel, in their brief, have cited a long line of decisions, holding that mere packing material does not acquire a dutiable status. It is unnecessary to review any of those cases in detail. We shall refer to them with brief comment as we proceed.

*United States* v. *E. W. J. Hearty, Inc.*, 31 C. C. P. A. 106, C. A. D. 257, concerned tins of chicken breasts, containing 10 ounces of meat and 6 ounces of a gelatinous substance known as "zalivka," composed of water, salt, caramel or burnt sugar, and agar-agar. Seven qualified witnesses, all users of the product, testified on behalf of the importer, and the court found that "their testimony abundantly supports the conclusion of the trial court that the 6 ounces of broth and agar-agar contained in each tin is of no commercial value and that in practice

it is discarded upon opening the container." It was therefore held that only the chicken breasts were subject to duty and that the content of the tins, other than the chicken breasts, was a packing material, having no tariff status.

In *Foo Lung & Co.* v. *United States*, 20 C. C. P. A. 316, T. D. 46088, the merchandise consisted of peeled sugarcane, cut to various lengths to suit the size of the container, and packed with sugar and water in hermetically sealed cans. The record consisted of the uncontradicted testimony of "several witnesses," each of whom testified that "when the cans were opened the juice was not used for any purpose and was of no value but was thrown away, the cane alone being eaten." The packing material—sugar and water—was held not to be dutiable. In reaching the conclusion, the court cited the analogous case of *Peabody* v. *United States*, 13 Ct. Cust. Appls. 80, T. D. 40935, wherein only the raw pineapple was held to be dutiable in an importation consisting of pineapple packed in tins filled with water, upon a satisfactory showing that "the fluid was 'tinny,' had no commercial value or use, and was thrown away."

*Von Bremen, Asche, De Bruyn, Inc.* v. *United States*, 64 Treas. Dec. 269, T. D. 46643, related to pimientos with seeds and pulp removed and packed in tins containing water. Both sides introduced the testimony of several witnesses. Upon a finding that the preponderance in weight of the evidence established that the liquid, having no value, was customarily discarded and the merchandise was sold upon the basis of the net weight, the court held the importation dutiable on the weight of the pimientos, exclusive of the liquid contained in the tins.

In *Axel Stokby et al.* v. *United States*, 4 Cust. Ct. 343, C. D. 358, a pickling solution, added to cans of boiled hams but discarded and not sold to consumers as part of the hams, was held to have no dutiable status, the conclusion being based on testimony of 11 witnesses called by the importer. *H. K. Wheeler, Inc.* v. *United States*, 9 Cust. Ct. 30, C. D. 655, involved substantially the same merchandise and presented the identical issue. The court followed the *Axel Stokby et al.* case, *supra*, holding the added gelatinous material not to be subject to duty.

Salty water, used in containers of peas to protect the merchandise from injury and then thrown away as useless, was held to have no dutiable status, *Von Bremen, Asche & Co.* v. *United States*, 57 Treas. Dec. 679, T. D. 44000. The same conclusion was reached in *Frank P. Dow Co. (Inc.)* v. *United States*, 58 Treas. Dec. 802, T. D. 44444, and *Lakeside Fish & Oyster Co.* v. *United States*, 69 Treas. Dec. 803, T. D. 48301, with respect to a film of ice that served as a protective layer for frozen salmon and filleted pike, respectively, the water being discarded after melting. Of like tenor was *Lekas & Drivas* v. *United*

*States*, 19 Ct. Cust. Appls. 389, T. D. 45523, as it related to the packing fluid used in containers of green beans. The same can be said of *Enbun Co.* v. *United States*, 73 Treas. Dec. 192, T. D. 49388, in disposing of a similar issue relating to fish roe packed in sake lees for preservation.

*Briones & Co. (Inc.)* v. *United States*, 48 Treas. Dec. 601, T. D. 41272, held anchovies in large tins in brine, plus a wooden disk to hold the fish in place, to be dutiable on the net weight of the fish alone, without any consideration for the added packing material. The court ruled the same way in *Lincoln, Willey & Co.* v. *United States*, 7 Treas. Dec. 1026, T. D. 25409, as it related to the brine in which salt or pickled fish in barrels was immersed.

In all of the cases hereinabove cited, the court was favored with competent testimony sufficient to establish as matter of fact that the material or substance that had been added to the imported merchandise had no commercial value and was always discarded as worthless.

This record will not permit analogous reasoning in the present case. The testimony is inadequate for a factual basis upon which to invoke the principle applied in said cases. The failure to present individuals qualified to show commercial usage of cans of Norwegian sild-sardines, with attendant disposition of the added oil, reflects weakness in the claim alleged herein.

The protest is overruled and the decision of the collector, which is presumptively correct, is affirmed. Judgment will be rendered accordingly.